**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **WARRIORS AND FAMILY** | § | |
| **ASSISTANCE CENTER LLC, TONYA** | § | |
| **PRICE, MANRING & FARRELL** | § | |
| **ATTORNEYS AT LAW, and** | § | |
| **CLIFFORD FARRELL, individually and** | § | **1-23-CV-1473-DII** |
| on behalf of all others similarly situated, | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| **VA CLAIMS INSIDER, LLC, BRIAN T.** | § | |
| **REESE, and LAUREL REESE f/k/a** | § | |
| **LAUREL DANIELSON,** | § | |
| Defendants. | § | |

**ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court are Defendant's Opposed Rule 12(f) Motion to Strike Privileged Communications from Plaintiffs' Amended Complaint and Original Complaint (Dkt. 23), Defendants' Motion to Dismiss Plaintiffs' Complaint (Dkt. 24), and all related briefing.[1] Dkts. 30, 32, 33, 35, 39, 40. Having considered the pleadings, the relevant case law, and the entire case file, the undersigned submits the following Report and Recommendation to the District Judge.

**I.    BACKGROUND**

Warriors and Family Assistance Center LLC, Tonya Price, Manring & Farrell Attorneys at Law, and Clifford Farrell, individually and on behalf of all others similarly situated, bring this class action against Defendants VA Claims Insider, LLC ("VACI"), Brian T. Reese, and Laurel

---

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for disposition and a Report and Recommendation as to the merits, as appropriate, pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.  *See* Text Orders dated July 8, 2024.

1

Reese f/k/a Laurel Danielson (collectively, "Defendants"). Dkt 17 (Amd. Class Action Compl. ("ACAC"). Plaintiff Price is a Veteran's Affairs accredited agent, who works for Warriors. *Id*. ¶¶ 104-05. Plaintiff Farrell is a VA-accredited attorney, who assists Veterans in applying for disability benefits. *Id*. ¶¶ 112, 117.

The VA requires that any person assisting a veteran with preparing, presenting, and/or prosecuting a VA claim must be accredited with the VA, which thoroughly regulates them and the fees they can charge for their assistance. *See* 38 C.F.R. § 14.629(b)(1). In the initial stage, veterans may turn to county governments or Veteran Service Organizations ("VSOs"), which offer accredited representatives to assist veterans without charge. ACAC ¶ 28. Once a veteran receives an initial claim rating, they may continue with their VSO or engage a for-profit VA-accredited agent or attorney. *Id*. ¶ 29. In order to maximize the benefits that flow directly to veterans, the VA has—by design—precluded any person or entity from receiving compensation for an initial claim, even those that are VA-accredited. 38 U.S.C. § 5904(c)(1). Unlike the county and VSO representatives, accredited attorneys and agents may charge regulated fees for assistance with steps other than the initial claim. ACAC ¶ 37.

The VA also protects veterans by regulating the fees accredited attorneys and agents may charge and their payment arrangements. *Id*. ¶ 42; 38 C.F.R. § 14.636(e). Additionally, all fee agreements must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. 38 C.F.R. § 14.636(g). A copy of those signed written agreements must then be sent to either the VA or Office of General Counsel ("OGC") within 30 days. 38 C.F.R. § 14.636(g)(3). Failure to comply with these fee regulations permits the VA to terminate the accredited attorney or agent's accreditation. *Id*. § 14.636(j). If a veteran believes the accredited

2

attorney or agent has unfairly charged them, the VA's OGC can review a fee agreement on its own or at the veteran's request and order that the accredited attorney or agent's fee be reduced. *Id*.

However, the VA does not currently have the authority to enforce its accreditation requirements under federal law and instead rely on "federal, state, and local enforcement agencies . . . for possible prosecution under their laws" because there is no federal enforcement mechanism against unaccredited actors "charging illegal fees[.]" *Veterans Guardian VA Claim Consulting, LLC v. Platkin*, No. CV-23-20660-MAS-JBD, 2024 WL 69920, at 3 (D.N.J. Jan. 5, 2024), *appeal docketed*, No. 24-1097 (3d Cir.).

Brian Reese is VACI's sole member, owner, and manager. ACAC ¶ 8. Laurel Reese is its Chief Financial Officer. *Id*. ¶ 15. VACI's employees are not VA-accredited attorneys or agents. *Id*. ¶ 24. VACI describes itself as offering "educational consulting," "medical consulting," and "claims coaching." *Id*. ¶ 49. VACI asserts it plays no part in preparing, presenting, and/or prosecuting claims. *Id*. VACI contends its practices pass muster under all of the VA's regulations because they constitute consulting services and not assistance with disability claims. *Id*.

Plaintiffs allege VACI's claims are false. *Id*. Plaintiffs assert VACI assesses illegal fees for assisting with initial claims; unlawfully prepares, presents, and/or prosecutes claims before the VA (often under the guise of a pro se veteran); sends those prepared claims in the mail to veterans for review and signature; mails the prepared claims to the VA and/or submits the claims using veterans' e-benefits portal, charges interest and late penalties on illegally prepared claims; fails to submit its fee agreements to the VA; bills veterans for claims assistance even when VACI never assisted with the claim; and charges fees that exceed the cap under federal law. *Id*. ¶ 50.

Plaintiffs allege the VA sent VACI and Brian Reese a letter informing them that the VA had received information that VACI may be engaged in illegal activities. *Id*. ¶ 91. The letter further

informed Brian Reese and VACI that if they did not take "appropriate measures to cease any and all illegal activities," it would "refer the matter to the appropriate law enforcement authorities." Plaintiffs allege Defendants did not immediately cease the preparation, presentation, and prosecution of VA disability claims, even though they were informed that their practices are illegal and misleading. *Id.* ¶ 97.

Plaintiffs assert two claims against Defendants: (1) a Lanham Act false advertising claim and (2) a Texas common law unfair competition by misappropriation claim. *Id.* ¶¶ 162-88. Defendants have moved to dismiss and have moved to strike portions of the Complaint. Because the motion to dismiss turns on the facts pleaded, the court will address the motion to strike first.

## II.   MOTION TO STRIKE

Plaintiffs pleaded:

> 98. Instead, an investigative-journalism piece from the Texas Tribune reports that VACI "hired a law firm to perform an internal risk analysis." According to the Texas Tribune exposé, the firm stated that it "cannot give VACI assurance that the business model and existing contracts will not be reviewed, investigated, and challenged by regulatory authorities (or prosecutors) empowered to do so, or that if challenged, VACI will prevail."[]

ACAC ¶ 98. Plaintiffs also reference the law firm's internal risk analysis in paragraphs 174a, 176, and 185. Defendants assert the law firm's investigation and analysis are both attorney work product and privileged attorney-client communication. As such, Defendants assert paragraph 98 should be struck in its entirety and the references to the investigation in paragraphs 174a, 176, and 185 should be struck.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "But striking a pleading is disfavored and should be done sparingly, as it is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic." *Tesla, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 1:23-CV-1466-

DII, 2024 WL 1252920, at *2 (W.D. Tex. Mar. 22, 2024) (citing *Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 626 (E.D. Tex. 2010)). Moreover, striking portions of a pleading under Rule 12(f) is appropriate only upon a showing of prejudice to the moving party. *Id.* (citing *Buckley*, 748 F. Supp. 2d at 626).

Plaintiffs argue the information in the Texas Tribue article is directly related to their claims and is not immaterial, impertinent, nor scandalous. They also argue Defendants have failed to show that the information is currently privileged or that they have been prejudiced by inclusion of the information in the Complaint.

Defendants have demonstrated that the information is privileged and that they have not waived any privilege. Dkt. 23-1 (Reese Decl.). Although the information is in the public domain, courts may strike allegations that use privileged communications. *See Sims v. Roux Labs., Inc.*, No. CIV.A. 06-10454, 2007 WL 2571941, at *4 (E.D. La. Aug. 31, 2007); *see also Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2020 WL 1864876, at *5 (E.D. La. Apr. 14, 2020), on reconsideration in part, No. CV 19-11793, 2020 WL 4471519 (E.D. La. Aug. 4, 2020), and aff'd sub nom. *Muslow v. La. State Univ. & Agric. & Mech. Coll., Bd. of Supervisors*, No. 22-30585, 2023 WL 5498952 (5th Cir. Aug. 24, 2023) (citing *Sims*, 2007 WL 2571941, at *1 (citations omitted)). Plaintiffs have not cited any case—and the court is not aware of any case—holding that the attorney client communication or work product privileges are nullified when privileged information becomes public without the privilege holder's consent.

Accordingly, the court grants VACI's motion.

### III.  MOTION TO DISMISS

#### A.  Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*.  First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an

entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

**B. Analysis**

Defendants first argue the ACAC should be dismissed as a shotgun pleading. Next, Defendants contend Plaintiffs' false advertising claim fails because the statements at issue are literally true, not alleged to be untrue, are not misleading, and are not actionable under the Lanham Act. Third, Defendants assert Plaintiffs' misappropriation claim fails because no product was misappropriated. Fourth, Defendants contend the ACAC fails to plausibly allege damages. Fifth and finally, Defendants argue the ACAC fails to state a claim against the individual defendants. The court will address each of these in turn.

1. Shotgun Pleading

Group pleading or "shotgun pleading" is disfavored—a "sin"—in the Fifth Circuit. *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th Cir. 2015)). "This court has rejected the group pleading doctrine." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015). Courts have identified four types of shotgun-style pleadings:

> [1] The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. [2] The next most common type . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. [3] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. [4] Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Lubbe v. Milanovich*, No. A-18-CV-1011-RP, 2019 WL 13460015, at *7 (W.D. Tex. Aug. 30, 2019), report and recommendation adopted, No. 1:18-CV-1011-RP, 2019 WL 13460014 (W.D. Tex. Sept. 26, 2019) (quoting 5C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1376 n.9.75 (3d ed.) (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015))).

First, Defendants argue the ACAC asserts multiple claims against multiple parties without specificity. The ACAC asserts two causes and names three defendants: VACI; Brian Reese, its sole owner, manager, and former President; and Laurel Reese, VACI's Chief Financial Officer. ACAC ¶¶ 18-19. This is not a case where the plaintiffs have sued multiple independent and unrelated defendants and are seeking to attribute the acts of every defendant to each defendant. Defendants have moved in their motion to dismiss the claims against Brian and Laurel Reese as insufficiently pleaded, and, if necessary, the court will address whether the claims against the individuals are adequately pleaded. Defendants have also moved to dismiss each claim as insufficiently pleaded, which the court will address. This is not a reason to dismiss the ACAC in its entirety.

Next, Defendants contend the ACAC is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Dkt. 24 at 9 (quoting *Owens v. TransUnion, LLC*, No. 4:20-cv-665, 2021 WL 5088686, at *9 (E.D. Tex. Aug. 30, 2021)). Defendants argue County One "vaguely asserts that 'Defendants' statements' violate the Lanham Act" and Count Two "similarly includes conclusory and imprecise references to 'Defendants' misleading statements.'" *Id*. (citing ACAC ¶¶ 166, 184). The court disagrees. Paragraph 166 actually lists categories a-f of statements that allegedly misrepresent the nature, characteristics, or qualities of VACI's services. ACAC ¶ 166. Although paragraph 184 does refer to "Defendants'

misleading statements," it is naturally read in the context of misleading statements identified in paragraph 166.

These arguments do convince the court that the ACAC is a shotgun pleading that fails to give Defendants adequate notice of the claims against them. The court also considered the order that Defendants submitted as supplement authority, but that order does not persuade the court that the above analysis should altered. *See* Dkt. 39.

2. False Advertising Claim

Plaintiffs assert a Lanham Act false advertising claim against Defendants. *See* 15 U.S.C. § 1125(a)(1)(B); ACAC ¶¶ 162-78. Plaintiffs allege Defendants' statements misrepresented the nature, characteristics, and qualities of the services they provided. ACAC ¶¶ 162-78.

To make out a prima facie case of false advertising under Section 43(a), the plaintiff must establish five elements: (1) a false or misleading statement of fact about a product; (2) such statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception was material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *Greater Houston Trans. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 681–82 (S.D. Tex. 2015).

Among other reasons, Defendants argue the false advertising claim fails because VACI's statements are not actionable under the Lanham Act. Relying on *IQ Products Co. v. Penzoil Products Co.*, 305 F.3d 368 (5th Cir. 2002), Defendants contend the Lanham Act cannot be used to enforce the VA's requirements, which have no private right of action. In *IQ Products*, the defendant marketed its Fix-A-Flat product without labeling it "flammable." *Id*. at 371-72. The

plaintiff alleged federal law required the product to be labeled "flammable" and not doing so was a Lanham Action violation. *Id*. at 372-73. The Fifth Circuit reasoned that the Federal Hazardous Substances Act ("FHSA") established a comprehensive scheme of product regulation and labeling, which the Consumer Product Safety Commission (CPSC") was responsible for enforcing. *Id*. at 373. The FHSA did not authorize a private cause of action. *Id*. The CPSC had the discretion to exempt substances from the FHSA's full requirements and to determine whether to prosecute FHSA violations. *Id*. The CPSC was aware of Fix–A–Flat's alleged labeling deficiencies but took no action. *Id*. at 374. The Fifth Circuit held that the plaintiff was "essentially seek[ing] to enforce the labeling requirements of the FHSA-an action which the CPSC, the enforcing agency, declined to do" and "conclude[d] that the defendants' failure to label the product in keeping with FHSA regulations, even if true, d[id] not constitute a false or misleading statement that is actionable under the Lanham Act." *Id*. Here, Defendants argue that Plaintiffs are similarly attempting to circumvent the enforcement mechanisms enshrined in federal law, which do not create a private right of action.

Plaintiffs attempt to distinguish *IQ Products* by pointing out that *IQ Products* was decided on summary judgment, and this case is still at the pleading stage. But Plaintiffs fail to explain how further development of the factual record would alter the analysis. Plaintiffs also argue they are not seeking to act in the VA's place, as the VA has already sent VACI a cease-and-desist letter. ACAC ¶ 91 & Exh. B. Additionally, Plaintiffs assert the Texas Office of the Attorney General has filed an enforcement suit against VACI. *See Texas v. VA Claims Insider, LLC*, No. 2023CI25316 (166th Dist. Ct., Bexar Cnty., Tex.). This is not convincing. That the VA is enforcing its requirements, or allowing the State of Texas to do so, does not mean Plaintiffs can also enforce the VA's requirements. Plaintiffs' attempts to distinguish *IQ Products* fall short.  Notably,

10

Plaintiffs cite no case where VA-accredited attorneys or agents were permitted to bring suit against actors like VACI.

Finally, Plaintiffs assert they have "alleged the difference between what the VA has already said VACI and Brian Reese illegally do, on the one hand, and how Defendants describe their conduct, on the other. That is properly considered a question of false advertising under the Lanham Act." Dkt. 33 at 13. But Plaintiffs describe VACI's false and misleading statements as "highlight[ing] their *noncompliance with the law* and *how they unlawfully compete* with accredited attorneys and agents." ACAC ¶ 52 (emphasis added). Thus, the import of VACI's false statements and misrepresentations are grounded in its non-compliance with VA regulations. *IQ Products* holds that this cannot form the basis for a Lanham Act claim. Plaintiffs have not pointed the court to any alleged misrepresentations that do not depend on the VA's regulations and, as such, may be allowed to proceed under *IQ Products*.

Accordingly, following *IQ Products*, the undersigned will recommend that Plaintiffs' Lanham Act claim be dismissed.

### 3. Misappropriation Claim

Plaintiffs allege that by complying with the VA's regulations, they have fostered the valuable ability to represent veterans in a legally permissible manner, developing valuable business in turn. ACAC ¶ 181. Plaintiffs assert these are valid commercial rights, protectable under Texas law. *Id*. Plaintiffs allege Defendants have unfairly competed with them by illegally preparing, presenting, and prosecuting VA disability claims and Defendants gain a special advantage over Plaintiffs by failing to comply with VA standards. *Id*. ¶ 183.

The parties agree on the elements of the Texas common-law tort of unfair competition by misappropriation, which requires:

> (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff.

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 775 (5th Cir. 2017); Dkt. 24 at 16 (citing *Motion Med. Techs.*); Dkt. 33 at 15 (citing *Motion Med. Techs.*). Defendants argue Plaintiffs have failed to state a claim a relief because Plaintiffs do not allege an actual "product" that was misappropriated. Plaintiffs assert their product is the lawful provision of claim preparation, presentation, and prosecution services. Dkt. 33 at 16. Both sides argue *Reed Migraine Centers of Texas, PLLC v. Chapman*, No. 3:14-cv-1204, 2015 WL 11120872 (N.D. Tex. Sept. 22, 2015), supports their position.

In *Reed*, the plaintiff argued it had a protectable property interest in its "marketing techniques and style of doing business" and the defendant misappropriated its business methods. *Reed*, 2015 WL 11120872 at 1, 3. The court noted that Reed did not allege its "marketing techniques and style of doing business" was a saleable product or protected trade secrets. *Id*. at 3. The court found Reed's actual product was "the provision of medical services to individuals suffering from severe migraines. *Id*. The court found "no basis to extend the common law action for misappropriation to Reed's "marketing techniques and style of doing business." *Id*.

Here, Plaintiffs argue their product is the provision of legal services to veterans, which constitutes a saleable product. But Plaintiffs are trying to fit a square peg into a round hole. As Defendants point out, Plaintiffs must show (1) they *created* a product through time, labor, skill, and money and (2) Defendants used *that product* in competition with Plaintiffs. Here, there is no allegation that Plaintiffs *created* legal services for veterans or that Defendants are using *Plaintiffs'* legal services at VACI. Instead, Plaintiffs allege they have followed the VA's regulations and rules

12

in becoming accredited and Defendants have not. While the court understands the unfairness of this situation, Plaintiffs have not alleged that Defendants have taken anything *from Plaintiffs*. Accordingly, the court will recommend that this claim be dismissed.

    4. Conclusion

Because the undersigned is recommending dismissal of both of Plaintiffs' asserted claims, the undersigned does not reach the issues of whether damages or the claims against the individual defendants have been adequately pleaded.

**C. Leave to Amend**

Plaintiffs ask that if the motion is granted in full or in part, that any dismissal be without prejudice and Plaintiffs be given leave to amend their pleading under Rule 15(a)(2). The deadline to file a motion to amend pleadings was July 3, 2024. Dkt. 44. Plaintiffs already filed an amended complaint after Defendants first moved to dismiss. Dkts. 17, 14.

Rule 15 governs motions to amend made before trial and provides that "[t]he court should freely give leave when justice so requires." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting FED. R. CIV. P. 15(a)(2)). "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Id*. (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)). A movant is required to give the court some notice of the nature of his or her proposed amendments. *Id*. ("it is clear that some specificity is required"). Even when proper notice is given, permissible reasons for denying a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. at 591 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts use the Rule 12(b)(6) standard to evaluate futility, and courts deny leave as futile

when "the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint." *Id.* at 591-92; *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

In this case, Plaintiffs have given the court no notice as to how they would amend their complaint to present cognizable, non-futile claims. Plaintiffs have also already tried and failed to cure these deficiencies. Accordingly, the undersigned recommends that leave to amend be denied, unless Plaintiffs can put forth cognizable claims during the objection period.

### IV.   ORDER AND RECOMMENDATION

As stated, the court **GRANTS** Defendant's Opposed Rule 12(f) Motion to Strike Privileged Communications from Plaintiffs' Amended Complaint and Original Complaint (Dkt. 23). The court directs the Clerk's Office to place the original Complaint (Dkt. 1) under seal and to publicly file Exhibit 2 to Defendants' Motion (Dkt. 23) in its stead. The court similarly directs the Clerk's Office to place the Amended Class Action Complaint (Dkt. 17) under seal and to publicly file Exhibit 3 to Defendants' Motion (Dkt. 23) in its stead.

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Motion to Dismiss Plaintiffs' Complaint (Dkt. 24) and **DISMISS** Plaintiffs' claims **with prejudice**.

### V.   OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED November 7, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE